******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN S. ADAMS, COADMINISTRATOR (ESTATE
OF RYAN MICHAEL ADAMS), ET AL. *v.*
AIRCRAFT SPRUCE AND SPECIALTY
COMPANY ET AL.
(AC 44524)

Bright, C. J., and Prescott and Bear, Js.

*Syllabus*

The plaintiffs, the administrators of the estate of the decedent, sought to recover damages from several defendants, including D, as a result of an airplane crash that killed the decedent, who was a passenger, and the pilot, C, D's eighteen year old daughter who had obtained her pilot's license about one month before the crash. C, who had no training or experience flying a Cessna 150H, was provided ground and dual flight instruction in the airplane approximately three weeks before the crash by E Co., a provider of flight instruction and airplane rentals, and its owner, B, after which B permitted her to fly the airplane without an instructor. C called E Co. to reserve a Cessna 150H airplane to fly on the day of the crash. The plaintiffs claimed, inter alia, that D had orally agreed with B prior to the crash that C would contact B about scheduling further training, which would include the rental of the airplane, and that D agreed to provide E Co. with a $1000 retainer, which D later paid, to cover the cost of its services and rental fees. Until the day of the crash, D was unaware that C had intended to fly that day, that she had rented the airplane or that she had flown it that day with the plaintiffs' decedent as a passenger. D filed a motion for summary judgment in which he claimed that he lacked the physical or legal control over the airplane that was required to establish liability under the doctrine of negligent entrustment. The trial court granted the motion, concluding, inter alia, that D lacked the requisite control of the airplane to be considered an entrustor or a supplier of it under a theory of negligent entrustment. On the plaintiffs' appeal to this court, *held* that the trial court properly granted D's motion for summary judgment, as there was no genuine issue of material fact that D's facilitation—monetary or otherwise—of C's access to the airplane was insufficient as a matter of law to demonstrate the element of control necessary to find D liable under the plaintiffs' negligent entrustment cause of action: the plaintiffs could not prevail on their claim that it was necessary to resolve the parties' dispute over whether D had arranged and paid for C's rental of the airplane before the court could determine whether D controlled the airplane or C's use of it, as that purported factual dispute did not raise any genuine issue of material fact that was relevant to the case insofar as access to and use of the airplane always remained exclusively within the power and control of its owners, B and E Co., and, even if D had acquired a right to use the airplane through an agreement with B and E Co., such interest never amounted to actual control of the airplane or control that was exclusive or superior to that of B and E Co., as D could never have had physical or constructive possession of the airplane without prior permission from B or E Co.; moreover, the undisputed evidence showed that B was responsible for deciding whether to rent the airplane and the terms and conditions of its rental, D had no right or ability to prevent other parties from leasing the airplane or to veto B's decision to allow C access to it on the day of the crash, and D was unaware on the day of the crash that C had flown the airplane or that the plaintiffs' decedent was a passenger; furthermore, contrary to the plaintiffs' unsupported contention, B and E Co. could not be considered, under the applicable provision (§ 390) of the Restatement (Second) of Torts, as third parties through whom D supplied C with the airplane, as the phrase "third person" in § 390 was construed to mean one who acts as a conduit for an entrustor, rather than one who exercises authority and control.

Argued February 9—officially released September 27, 2022

Action to recover damages for, inter alia, the allegedly wrongful death of the plaintiff administrators' decedent as a result of an allegedly defective product, and for other relief, brought to the Superior Court in the judicial district of Danbury and transferred to the judicial district of Stamford-Norwalk, Complex Litigation Docket, where the court, *Lee, J.*, granted the motion to dismiss filed by the named defendant; thereafter, the court, *Ozalis, J.*, granted the motion for summary judgment filed by the defendant James W. Depuy and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*David S. Golub*, for the appellants (plaintiffs).

*Laura Pascale Zaino*, with whom, on the brief, were *Richard C. Tynan* and *Logan A. Carducci*, for the appellee (defendant James W. Depuy).

*Opinion*

PRESCOTT, J. This appeal arises out of a tragic accident involving two first year students at Colgate University (Colgate) who died when the airplane in which they were flying, piloted by one of them, crashed in Morrisville, New York. The principal issue in this appeal is whether the father of the pilot can be held individually liable in an action brought by the estate of the deceased passenger on a claim of negligent entrustment because the father facilitated the airplane's rental from an entity operating out of a small airport near Colgate. More particularly, we are called on to consider whether there are genuine issues of material fact as to whether the father's actions could constitute sufficient control over the airplane, a potentially dangerous instrumentality, so that he could be deemed a supplier or entrustor of that instrumentality under our law regarding the tort of negligent entrustment.

The plaintiffs, John S. Adams and Mary Lou Hanney, brought the underlying action as coadministrators of the estate of their son, Ryan Michael Adams, who was eighteen years old when he died on September 20, 2015, in the airplane crash that also claimed the life of the eighteen year old, newly licensed pilot of the airplane, Cathryn Depuy. The plaintiffs now appeal from the summary judgment rendered against them on the two counts of their complaint brought against the defendant James W. Depuy, the father of the deceased pilot,[1] which sounded in negligence and negligent entrustment.

The plaintiffs claim on appeal that the trial court improperly rendered summary judgment with respect to the negligent entrustment count.[2] In particular, they claim that genuine issues of material fact remain in dispute regarding the defendant's rental of the Cessna 150H airplane that his daughter was piloting when it crashed, which, the plaintiffs contend, if proven, would demonstrate that he had the requisite control over the airplane to establish that he negligently entrusted the airplane to his daughter.[3] We conclude that no genuine issue of material fact exists and that the defendant is entitled to summary judgment as a matter of law on the negligent entrustment count because the undisputed facts demonstrate that, assuming he rented the airplane for his daughter's use, he nevertheless lacked the necessary control over the airplane to meet an essential element of a cause of action sounding in negligent entrustment. Accordingly, we affirm the judgment of the court.

The record before the court, which we view in the light most favorable to the plaintiffs as the nonmoving parties, reveals the following relevant facts and procedural history. On August 2, 2013, the defendant's daughter began taking ground instruction at the Danbury Airport in Connecticut. On August 17, 2015, shortly before

leaving for college and approximately one month prior to the crash at issue, she obtained her private pilot's license from the Federal Aviation Administration (FAA). Up to this point, all of her training and experience flying had been in a Piper Warrior airplane. She had no training or experience flying a Cessna 150H prior to leaving for college.

On August 23, 2015, the defendant's wife, Cathleen Wright, drove their daughter to Colgate, located in Hamilton, New York, intending to leave the vehicle with their daughter for her use while at college. The defendant, who also is a licensed pilot and owns his own plane, flew his plane to the Hamilton Municipal Airport to join his wife and help move their daughter into her dormitory room.

After he arrived at the airport in Hamilton, the defendant needed to wait for his wife to pick him up to bring him to the Colgate campus. During that time, the defendant had an opportunity to meet and speak with Richard O. Bargabos, who owned and operated Bargabos Earthworks, Inc., which was doing business as Eagle View Flight (Eagle View) and was based at the Hamilton Municipal Airport. Eagle View offered both flight instruction and airplane rentals. The two discussed the fact that the defendant's daughter was a licensed pilot. They agreed that she would contact Bargabos about scheduling further training at the Eagle View flight school, which would include the rental of Eagle View's Cessna 150H airplane, and that Eagle View would be provided with a $1000 retainer to cover the cost of Eagle View's services, including any rental fees.[4] This was the only conversation that the defendant had with Bargabos until after the plane crash on September 20, 2015. After the defendant helped his daughter move into her dormitory room, she drove him and Wright back to the Hamilton Municipal Airport, and the defendant flew himself and his wife back to the airport in Danbury.

The defendant's daughter attended Eagle View's flight school on August 29 and 30, 2015, at which time Bargabos provided her with both ground instruction and dual flight instruction in a Cessna 150H airplane owned by Eagle View. On August 30, 2015, Bargabos permitted her to fly the Cessna 150H airplane by herself without an instructor.

On August 31, 2015, the defendant spoke with his daughter on the phone and learned that she had begun receiving flight instruction from Bargabos and Eagle View. He asked her how she had paid for those services, and she indicated that she had not yet paid any money to Eagle View. Thereafter, the defendant sent a $1000 check to Eagle View payable to "Eagle View Flight." He included a handwritten note with the check, indicating that the money was for "flight training [and] plane rental for Cathryn Depuy." Neither the check nor the

note made reference to any specific dates, to a specific aircraft, or to how the $1000 payment was to be allocated between past and future instruction and rentals. The defendant never signed any rental agreement or other paperwork with Eagle View or Bargabos.[5]

The defendant was not aware until after the crash occurred that Bargabos had cleared his daughter to fly without a flight instructor out of the Hamilton Municipal Airport. The defendant was also not aware that his daughter had intended to fly anywhere on September 20, 2015, that she had rented an airplane on that date, or that she flew with the plaintiffs' decedent as a passenger.

Bargabos and Eagle View had rented the same Cessna 150H airplane to two other pilots in the week prior to renting it to the defendant's daughter on September 20, 2015. Bargabos and Eagle View permitted her to rent the plane on the day of the crash without any communication with the defendant and allowed her to fly it without a flight instructor. Ryan Adams joined her as a passenger. Shortly before 12:51 p.m., on September 20, 2015, the Cessna 150H airplane apparently lost power to the engine.[6] The airplane soon thereafter crashed to the ground, and both teenagers were killed.

In September, 2017, the plaintiffs commenced the underlying lawsuit. The operative revised complaint was filed on March 23, 2018, and contained six counts. Counts one and two alleged product liability against Aircraft Spruce & Specialty Company (Aircraft Spruce) and Kelly Aerospace Power Systems, Inc., and its successor in liability, Kelly Aerospace Energy Systems, LLC, related to the airplane's allegedly faulty carburetor.[7] Count three sounded in negligence and was brought against the defendant and Wright in their representative capacities as the coadministrators of their daughter's estate. Count four alleged negligent entrustment of the airplane by Bargabos and Eagle View. Counts five and six were brought against the defendant in his individual capacity and, as previously stated, sounded in negligence and negligent entrustment. The defendant filed an answer and special defenses to the revised complaint.

On January 30, 2020, the defendant filed a motion for summary judgment as to both counts against him individually and a memorandum of law in support of the motion. Attached to the memorandum of law were exhibits consisting of excerpts from the depositions of Hanney and Bargabos; sworn affidavits by the defendant and Bargabos; a copy of the handwritten note that accompanied the defendant's payment to Eagle View; and a copy of the final accident report issued by the National Transportation Safety Board regarding the September 20, 2015 crash.

With respect to the negligence count, the defendant

argued that he was entitled to summary judgment as a matter of law because he had no legal right or duty to control his adult daughter on the date of the accident or any duty to protect the plaintiffs' decedent. He also argued that an action for negligence could not be maintained unless some legally cognizable duty of care exists. With respect to the negligent entrustment count, the defendant argued that he could not be liable as a matter of law on a theory of negligent entrustment because he had no physical or legal control over the Cessna 150H involved in the crash, which was owned by Eagle View and which Bargabos had cleared his daughter to use.

The plaintiffs filed a memorandum of law in opposition to the motion for summary judgment, to which they attached a number of exhibits, including excerpts from interrogatory responses by Bargabos and Eagle View, and excerpts from transcripts of depositions of Bargabos, the defendant, Wright, and the plaintiffs. The plaintiffs argued that there were genuine issues of material fact in dispute that should preclude the rendering of summary judgment. Two of those issues arguably pertained to elements of the negligent entrustment count that is at issue on appeal, namely, whether the defendant had supplied or "entrusted" the airplane to his daughter, and whether he had done so with knowledge that her inexperience or incompetence as a pilot presented an unreasonable risk of physical harm to her or a third party.

First, with respect to the entrustment element, the plaintiffs argued that a factual dispute remained as to the manner in which the defendant had arranged and/ or paid for the rental of the Cessna 150H used in the crash. Specifically, the plaintiffs note Bargabos' statements regarding (1) the meeting between the defendant and Bargabos at the Hamilton Municipal Airport in August, 2015, at which the defendant had requested that Bargabos provide the defendant's daughter with flight instruction and airplane rental for her use, which Bargabos agreed to do, and (2) the check and note later sent to Eagle Flight by the defendant that specifically references airplane rental. See footnote 4 of this opinion.

Second, with respect to the defendant's knowledge of the risk involved, the plaintiffs argued that a dispute exists about whether the defendant knew or should have known that it would be dangerous, and therefore inappropriate, for him to rent an airplane for use by his newly licensed and inexperienced eighteen year old daughter. In particular, the plaintiffs point out that, according to Hanney's deposition testimony, which was a part of the summary judgment record, two weeks prior to the crash, the plaintiffs, the defendant, and Wright had a conversation after church services during which Wright expressed reservations about the defen-

dant's daughter flying in general and, in particular, with her flying with passengers. Allegedly, Wright had told the plaintiffs that she had spoken with the mother of another person who her daughter had offered to take flying, and had stated: "And I want you to know that I wouldn't let my other daughter fly with [Cathryn] for fear of losing them both." The defendant denies being present for this conversation or hearing that statement.

The court heard oral argument on the motion for summary judgment and subsequently issued a memorandum of decision rendering judgment in favor of the defendant on both counts against him. With respect to the negligent entrustment count, the court concluded as a matter of law that the defendant lacked the requisite control over Eagle View's Cessna 150H airplane to be considered an entrustor or supplier of the aircraft.

The court explained in relevant part: "It is clear from the undisputed evidence submitted in support of this motion for summary judgment, that there is no genuine issue of material fact that [the defendant] did not have a superior right or exclusive control of the Cessna 150H airplane involved in the crash on September 20, 2015. The evidence shows that Bargabos and Eagle View owned the aircraft, controlled the scheduling for the rental of the plane, controlled which pilots were deemed sufficiently proficient to rent their planes, and never communicated with [the defendant] about reserving the Cessna 150H airplane for [his daughter] on September 20, 2015, or any other date, or the circumstances under which she could use the plane. [The defendant's] payment for [his daughter's] flight instruction and plane rental was not specific to dates or routes. The plaintiffs have not presented any evidence that [the defendant] knew [his daughter] was flying the Cessna 150H airplane on September 20, 2015, who she would be flying with, or where she would be flying to. The undisputed evidence shows that it was [the defendant's daughter], in sole coordination with Eagle View, who made the arrangements for the airplane rental on September 20, 2015." Because the court determined that the defendant had met his burden of demonstrating that there was no genuine issue of material fact and he lacked the requisite control over the aircraft piloted by his daughter on the day of the crash to be liable under a theory of negligent entrustment, it granted the motion for summary judgment in favor of the defendant on that count. This appeal followed.

The plaintiffs claim on appeal that the trial court improperly granted the defendant's motion for summary judgment with respect to the negligent entrustment count. They argue that the court impermissibly resolved genuine issues of material fact and ignored controlling legal principles in arriving at its conclusion that, as a matter of law and undisputed fact, the defendant lacked the requisite control over Eagle

View's Cessna 150H to qualify as an entrustor of the airplane. The defendant argues to the contrary that the court properly rendered summary judgment in his favor with respect to the negligent entrustment count because the undisputed facts confirm that he did not have the necessary control, power, or authority to entrust Eagle View's airplane to his daughter, and, even if he did, he did not know or have reason to know that his daughter was unfit to fly the airplane. On the basis of our review of the summary judgment record, we agree with the defendant that his facilitation—monetary or otherwise—of his daughter's access to the airplane at issue was insufficient as a matter of law to demonstrate control of the airplane necessary to find him liable under a theory of negligent entrustment. Before turning to our analysis of the plaintiffs' claim, we first set forth relevant legal principles, including our standard of review and a discussion of the common-law tort of negligent entrustment as it exists in this state and in other states.[8]

## I

Our standard of review with respect to a court's ruling on a motion for summary judgment is well settled. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, 156 Conn. App. 813, 817–18, 114 A.3d 944 (2015). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012).

We now turn to the applicable substantive law. It is

a well accepted general tort principle that a person ordinarily will not be deemed liable for the actions of another that result in an injury to a third party. See, e.g., *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811 (1996) ("absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another" (internal quotation marks omitted)). As stated in § 315 of the Restatement (Second) of Torts: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection."[9] 2 Restatement (Second), Torts § 315, p. 122 (1965); see also *Murdock* v. *Croughwell*, 268 Conn. 559, 567, 848 A.2d 363 (2004) (applying § 315 and noting that, by its express terms, it "is an exception to the general rule that there is no duty to control the conduct of a third person").

The tort of negligent entrustment is another exception to this general tort principle. "The rationale underlying the imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others. The purpose of the negligent entrustment doctrine is to articulate a set of standards that, if met, establish the duty and breach elements of a negligence claim without the necessity for the detailed analysis that often is required to determine the existence of a duty." (Footnotes omitted.) 57A Am. Jur. 2d 387, Negligence § 293 (2022); see also *Casebolt* v. *Cowan*, 829 P.2d 352, 359 (Colo. 1992) ("the very purpose of the doctrine of negligent entrustment is to establish criteria by which to resolve the difficult issues of duty and breach when negligent entrustment elements are established").

In *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 78–81, 202 A.3d 262, cert denied sub nom. *Remington Arms Co., LLC* v. *Soto*,      U. S.     , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019), our Supreme Court explained the historical background of the common-law tort of negligent entrustment and how it has developed thus far in Connecticut.[10] The court traced the origin of the tort back to a nineteenth century English case, *Dixon* v. *Bell*, 105 Eng. Rep. 1023 (K.B. 1816). See *Soto* v. *Bushmaster Firearms International, LLC*, supra, 78. "In *Dixon*, the defendant sent a preadolescent girl to retrieve a loaded gun, resulting in the accidental shooting of the plaintiff's son. . . . In upholding a verdict for the plaintiff that the defendant was liable for entrusting the girl with the care and custody of the weapon, the court recognized that he well [knew] that the said [girl] was too young, and an unfit and improper

person to be sent for the gun . . . ." (Citation omitted; internal quotation marks omitted.) Id. The court further stated: "American courts began applying the doctrine of negligent entrustment in the 1920s, following the advent of the mass produced automobile . . . and Connecticut first recognized the common-law cause of action in *Turner* v. *American District Telegraph & Messenger Co.*, 94 Conn. 707, 110 A. 540 (1920).[11] In that case, the defendant security company entrusted a loaded pistol to an employee who later instigated a fight with and ultimately shot the plaintiff, a customer's night watchman. . . . [Our Supreme Court] held that there was insufficient evidence to support a verdict for the plaintiff on his negligent entrustment claim because there was not even a scintilla of evidence that the defendant had or [should] have had knowledge or even suspicion that [its employee] possessed any of the traits . . . attributed to him by the plaintiff, including that he was a reckless person, liable to fall into a passion, and unfit to be [e]ntrusted with a deadly weapon . . . ." (Citations omitted; footnote added; internal quotation marks omitted.) Id., 78–79. The court then stated: "Without this vitally important fact . . . the plaintiff's claim falls to the ground . . . ." (Internal quotation marks omitted.) *Soto* v. *Bushmaster Firearms International, LLC*, supra, 79.

The court in *Soto* next discussed *Greeley* v. *Cunningham*, 116 Conn. 515, 165 A. 678 (1933), in which our Supreme Court articulated the standards that govern a negligent entrustment action in the context of automobiles, which, as the court in *Soto* noted, has since "become the primary context in which [negligent entrustment] claims have arisen."[12] *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 79. Relying on language from *Greeley*, the court in *Soto* stated that the elements of a cause of action sounding in negligent entrustment of an automobile are "(1) the owner of an automobile entrusts it to another person (2) whom the owner knows or should reasonably know is so incompetent to operate it that injury to others should reasonably be anticipated, and (3) such incompetence results in injury."[13] Id., 80.

The court emphasized in *Soto* that "a cause of action for negligent entrustment—whether involving a vehicle, a weapon, or some other dangerous item—will [not] lie in the absence of evidence that the direct entrustee is likely to use the item unsafely. Most jurisdictions that have recognized a cause of action in negligent entrustment likewise require that the actor have actual or constructive knowledge that the specific person to whom a dangerous instrumentality is directly entrusted is unfit to use it properly. . . . In accordance with the majority view, this also is the rule set forth in the Restatement (Second) of Torts. Section 308 of the Restatement (Second) of Torts[14] provides that [i]t is negligence to permit a third person to use a thing . . .

[*that*] *is under the control of the actor*, if the actor knows or should know that such person intends or is likely to use the thing . . . in such a manner as to create an unreasonable risk of harm to others. . . . Section 390,[15] which further defines the tort of negligent entrustment, provides that [o]ne who supplies . . . a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others . . . is subject to liability for physical harm resulting to them. . . . We take it as well established, then, that, in order to prove negligent entrustment, a plaintiff must demonstrate that (1) the defendant has entrusted a potentially dangerous instrumentality to a third person (2) whom the entrustor knows or should know intends or is likely to use the instrumentality in a manner that involves unreasonable risk of physical harm, and (3) such use does in fact cause harm to the entrustee or others." (Citations omitted; emphasis altered; footnotes added; internal quotation marks omitted.) Id., 80–81.

The principal issue decided by the court in *Soto* was whether the plaintiffs in that case had met the second of these three enumerated requirements that it identified as necessary to sustain a cause of action for negligent entrustment.[16] Accordingly, the decision does not discuss in any meaningful way the first requirement, which is the focus of our inquiry in the present appeal. Nonetheless, it is clear from the court's discussion in *Soto* preceding its recitation of the three requirements that it employed and approved of the analytical approach found in the Restatement (Second) of Torts, as expressed in §§ 308 and 390, which is consistent with the approach taken by courts in other jurisdictions when considering the tort of negligent entrustment. See, e.g., *Casebolt* v. *Cowan*, supra, 829 P.2d 358–59, and cases cited therein; id., 358 ("[i]n electing to utilize [§§] 308 and 390 of the Restatement to guide us in our analysis, we follow a path already taken by a number of other states that have employed, approved, or adopted those Restatement rules as part of their negligence jurisprudence" (footnote omitted)); see also *Neary* v. *McDonald*, 956 P.2d 1205, 1208 (Alaska 1998) (in adopting [§§] 308 and 390, court recognized that "[m]ost states have patterned their versions of the negligent entrustment doctrine after [§§ 308 and 390] of the Restatement (Second) of Torts"). Furthermore, comment (b) to § 390 explains that the rule stated in § 390, which pertains to the supplying of a chattel to a person who is incompetent to use it safely, "is a special application of the rule stated in § 308," which applies more broadly to all types of property and activities. 2 Restatement (Second), supra, § 390, comment (b), p. 315. Accordingly, §§ 308 and 390 must be read in conjunction with one another. See *Broadwater* v. *Dorsey*,

344 Md. 548, 558, 688 A.2d 436 (1997) ("[s]ections 390 and 308 [of the Restatement (Second) of Torts] are in pari materia, and must be read together").[17]

Accordingly, consistent with §§ 308 and 390 of the Restatement (Second) of Torts and the commentary thereto, we interpret the first *Soto* requirement—that a plaintiff must demonstrate that the defendant "entrusted a potentially dangerous instrumentality"; *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 81—to require a plaintiff to show that the potentially dangerous instrumentality supplied or entrusted by the defendant was "under the control of" the defendant at the time possession was transferred.[18] 2 Restatement (Second), supra, § 308, p. 100. Such a construction is consistent with other jurisdictions that have adopted the Restatement's approach to the tort of negligent entrustment, as well as other authoritative secondary sources.

As courts in other jurisdictions persuasively have reasoned, actions by a defendant that only facilitate another's ability to have access to a potentially dangerous instrumentality from a third party will be insufficient, without more, to establish *control* over the instrumentality for purposes of sustaining an action for negligent entrustment. Some examples are useful to illustrate this point.[19]

In *Zetter* v. *Griffith Aviation, Inc.*, Docket No. 6:03-218-DCR, 2006 WL 1117678 (E.D. Ky. April 25, 2006), the federal District Court granted a motion for summary judgment on a negligent entrustment count that arose out of an airplane crash. Id., *13–14. The relevant undisputed facts were as follows: Todd Zetter was the vice president of a company with operations in Griffith, Indiana. Id., *1. Zetter, his wife, and four children lived in Somerset, Kentucky. To entice Zetter to agree to work in Griffith while his family remained in Somerset, the company included a clause in his employment contract that allowed Zetter to fly home to Somerset on weekends or his family to fly to Griffith. Id. To arrange these flights, Zetter would speak with an administrative assistant at the company, who would then arrange the details of the flights. Id. The administrative assistant would first obtain approval for the flight from the company's president and then would contact Griffith Aviation, a fixed base operator at Griffith Airport in Griffith. Id. Griffith Aviation would provide a pilot, who ordinarily would fly Zetter or his family in an airplane owned by the company's president or one of his businesses. Id. On one of these routine trips, Zetter's wife and children were returning home after visiting Zetter in Griffith in a Cessna 421 owned by a different party. Id., *1–2, 15. That plane crashed as it was making its final approach to the Somerset airport. Id., *1. One of Zetter's children was ejected from the aircraft and died. Id. The pilot and another passenger in the front seat were also killed.

Id. Zetter's wife and his other three children were injured but survived the crash. Id. The Zetters filed a lawsuit against multiple parties, alleging both tort and contract causes of action. Id. One count was brought against Zetter's employer and sounded in negligent entrustment on the theory that the company had allowed the pilot to operate the Cessna without proper FAA licensing and without verifying the pilot's currency with FAA regulations. Id., *13.

The company moved for summary judgment, arguing, inter alia, that the plaintiffs could not establish the elements of negligent entrustment because the company did not own the aircraft that had crashed. Id. The District Court recognized that Kentucky had adopted § 390 of the Restatement (Second) of Torts, pursuant to which the plaintiffs needed to establish, inter alia, that the company was the "supplier of" the airplane that crashed. Id., *13–14. The court concluded that summary judgment on the negligent entrustment count was warranted because "the plaintiffs ha[d] not identified sufficient evidence by which a reasonable jury could find that [the company] 'supplied' the plane." Id., *14. Although the court recognized that "nowhere is it explicitly stated, in either § 390 or any of the cases interpreting it, that the party supplying the chattel must have ownership, possession or control of the same, all of the comments and illustrations to the Restatement assume as much. . . . No authority has been cited in which a party was held liable under negligent entrustment where *it had no control at any time of the object (i.e., chattel) which was misused*. [The company] cannot be liable for negligently entrusting [the pilot] with a plane which was owned by [a third party] and kept at Griffith Airport. The plaintiffs have identified no evidence to suggest that [the company] *exercised any physical possession or control* of the [airplane that] was involved in the crash." (Citations omitted; emphasis added; footnotes omitted.) Id., *14–15. In other words, even though the company or its servants *had arranged for and financed* the ill-fated flight, those actions alone were insufficient to establish control of the airplane for purposes of sustaining a cause of action sounding in negligent entrustment. See id., *13–15.

In *Mejia* v. *Erwin*, 45 Wn. App. 700, 726 P.2d 1032 (1986), an automobile passenger was injured in a crash that also killed the driver. Id., 701. The passenger sued, inter alia, the deceased driver's father on a theory of negligent entrustment. Id. The undisputed facts established that the driver, who was twenty-nine years old, had contacted his father and asked to borrow the father's credit card in order to rent an automobile from a car rental company while the driver's own vehicle was being repaired. Id. The father agreed and went with the son to the car rental company to arrange for the rental. Id. The car was rented in the father's name,

although the rental agent knew that the son was to be the only driver and the rental agreement indicated that the driver would be the son. Id. The trial court rendered summary judgment in favor of the father on the negligent entrustment count, and the passenger appealed. Id., 701–702.

The Washington Court of Appeals upheld the trial court's summary judgment, holding in part that the driver's father had not "entrusted" the rental vehicle to his son. Id., 703. The court first recognized that "reason would suggest that a person renting or leasing a car *could* negligently entrust it to another" because "[a] person may be in control of a vehicle, for purposes of negligent entrustment, even though the person does not own a vehicle." (Emphasis added.) Id. The court summarily concluded nevertheless that, "even viewing the evidence here most favorably to [the plaintiff], there are no facts showing that [the father] *entrusted* a vehicle to [his son]. The facts reveal, rather, that [the father] was simply lending his credit to [his son] to assist him in renting a replacement automobile. The fact that the automobile was rented in [the father's] name does not alter the true nature of this transaction—a mere accommodation."[20] (Emphasis in original.) Id. In other words, it was the rental car company, not the father, that had entrusted the vehicle to the son because the company had physical control over the vehicle and the authority to decide whether to rent it for the use of the son.

The Supreme Court of Colorado engaged in similar analysis in its en banc opinion in *Peterson* v. *Halsted*, 829 P.2d 373 (Colo. 1992). In that case, the plaintiffs, Barry Halsted, the operator of a vehicle that was struck by another vehicle operated by a twenty-five year old drunken driver, and Teresa Billings, the mother of a child in Halsted's vehicle who was killed in the crash, brought consolidated actions against the parents of the drunken driver, alleging, inter alia, negligent entrustment. Id., 375. The trial court rendered summary judgment in favor of the drunken driver's parents, and the plaintiffs appealed. Id. The Colorado Court of Appeals reversed the summary judgment rendered on the negligent entrustment counts, but the Colorado Supreme Court reversed the decision of the Court of Appeals, holding that the parents were not the "suppliers" of the automobile and the tort doctrine of negligent entrustment was not applicable under the facts presented. Id., 377. The facts showed that one of the parents had cosigned loan documents that allowed the drunken driver to purchase the vehicle that was later involved in the crash. Id., 376.

The court in *Peterson* first examined the rule stated in § 390 of the Restatement (Second) of Torts and the examples therein, and concluded that the "examples of suppliers all describe persons having possession or right to possession of a chattel at the time of entrustment and who directly supply the chattel to the

user." Id., 378. It then reasoned: "The purpose of the negligent entrustment doctrine is to articulate a set of standards that if met, establish the duty and breach elements of a negligence claim without the necessity for the detailed analysis that often is required to determine the existence of a duty. . . . *We are persuaded that the circumstances in which money or credit may be lent to facilitate the purchase of a vehicle are so many and varied as not to be readily adaptable to the simplified resolution of the duty question that results from the application of negligent entrustment analysis.* . . . Policy considerations may vary depending on the relationship of the lender to the borrower, the financial circumstances of the borrower, and the time elapsed between the loan and any resulting injury, to name but a few relevant factors. Our general negligence law is well adapted to take into account and weigh such manifold and disparate considerations in arriving at a conclusion whether a particular lender owes a duty of care to a particular injured party. . . . Accordingly, we think it unwise and destructive of flexibility of analysis to classify suppliers of money or credit categorically as suppliers of chattels under section 390 even though the loan or credit may be essential to the borrower in obtaining possession of the chattel." (Citations omitted; emphasis added.) Id.

Finally, in *Johnson* v. *Mers*, 279 Ill. App. 3d 372, 664 N.E.2d 668 (1996), one of the plaintiffs, James Johnson, had filed a lawsuit against a number of defendants after he was seriously injured by a municipal police officer who shot him with her service revolver, while off duty, during an altercation at Johnson's home.[21] Id., 375. One count of the multicount complaint was brought against the town in which the police officer was employed on a theory that the town had negligently entrusted the service revolver to the officer. Id. The undisputed facts demonstrated that, when the town hired the officer, she did not have a firearm owner's identification (FOI) card and that the chief of the town's police department had written a letter to a local gun shop on town stationery, verifying that she was a police officer to aid her acquisition of her service revolver. Id., 377. The town moved for summary judgment. Id., 375. The trial court rendered summary judgment on that count in favor of the town, and Johnson appealed. Id.

The Appellate Court of Illinois upheld the trial court's decision. Citing to and relying on § 308 of the Restatement (Second) of Torts and its commentary, the court stated: "[*E*]*ntrustment must be defined with reference to the right of control of the* [*defendant*] *over the subject property*, which, in the case at bar, is [the officer's] service revolver. . . . If [a defendant] does not have an *exclusive right or superior right* of control, no entrustment of the property can occur. . . . *The mere fact that* [*a defendant*] *facilitates the acquisition of the dangerous subject property, is, by itself, insufficient*

*to support an action for negligent entrustment. . . .*

"In the case at bar, the chief of [police] wrote a letter to a gun shop which *facilitated* [the officer's] acquisition of her service revolver before she was in possession of a valid FOI card. However, [the officer] subsequently received her FOI card and, thus, had a right, independent of her status as a police officer, to possess a firearm. The firearm was not owned by [the town], but had been purchased by [the officer]. Therefore, because [the officer's] service revolver was not in any way under the control of [the town], the trial court was correct in granting summary judgment in favor of [the town] as to [the negligent entrustment] count." (Citations omitted; emphasis added.) Id., 379; see also *Bailey* v. *Advance America*, *Cash Advance Centers*, *Inc.*, Docket No. 3:16-CV-256TSL-RHW, 2016 WL 9281316, *4 (S.D. Miss. June 8, 2016) (citing *Johnson* and other precedent for proposition that "no entrustment can occur unless the entrustor has an exclusive or superior right of control; *merely facilitating access to the property, by itself, is insufficient to support an action for negligent entrustment*" (emphasis altered)); *Bahm* v. *Dormanen*, 168 Mont. 408, 412, 543 P.2d 379 (1975) ("[T]he basis of negligent entrustment is founded on control [that] is greater [than] physical power to prevent. *A superior if not exclusive legal right to the object is a precondition to the imposition of the legal duty.*" (Emphasis added.)).

With this legal background and case law in mind, we now apply these principles to the present case to determine whether summary judgment was properly rendered.

## II

The trial court rendered summary judgment in favor of the defendant because, in its view, the undisputed facts showed that the defendant lacked the requisite control over the Cessna 150H to have liability under a theory of negligent entrustment. The court determined that the dispute about the precise contours of the arrangement between the defendant and Bargabos, by which the defendant facilitated his daughter's access to the Cessna 150H, including whether any actual agreement existed, did not raise a genuine issue of material fact because access to and use of the plane was and always remained exclusively within the power and control of Bargabos and Eagle View. On the basis of our plenary review of the summary judgment record, we agree with the trial court that the defendant is entitled to summary judgment on the negligent entrustment count because there is no genuine issue of material fact that he lacked the necessary control over the airplane to have "entrusted" it to his daughter.

The plaintiffs argue that a conclusion regarding whether the defendant controlled the aircraft or his

daughter's use of it requires resolution of the parties' factual dispute over whether the defendant had "arranged for his daughter's use of the plane and paid for its rental." Viewed in the light most favorable to the plaintiffs, however, this purported factual dispute does not raise any issue of fact that is material to the outcome of this case. Even if we were to assume that the defendant entered into an agreement with Bargabos through which he acquired some right to use the airplane, such interest alone never amounted to actual control over the airplane because he never could have had physical or constructive possession of it without the prior permission of Bargabos or Eagle View.[22] Thus, any control the defendant did have over the airplane could not be reasonably construed as exclusive or superior to that of Bargabos and Eagle View. It is undisputed that, as the owners-lessors of the airplane, Bargabos and Eagle View always had possession and control of the airplane prior to it being flown by the defendant's daughter, including on September 20, 2015, the day of the crash. Accordingly, they, not the defendant, had the right and ability, regardless of any prior dealing or agreement with the defendant, to determine whether the defendant's daughter would be permitted to fly on the day of the crash, in what airplane, and under what restrictions.

The plaintiffs argue that the trial court "seems to have concluded that 'control,' in the present context, requires 'superior' and 'exclusive' rights with respect to the entrusted chattel" and that "[t]hat conclusion is inconsistent with . . . recent Connecticut authority," citing the Superior Court decision in *Wilson* v. *Hopkins*, Docket No. CV-16-5042908-S, 2018 WL 3579160, *2 (Conn. Super. July 9, 2018). In particular, the plaintiffs rely on a statement by the trial court in *Wilson* that "[n]either the Restatement nor any controlling Connecticut authority agrees with imposing the additional requirement . . . that any allegation of control must allege exclusive control." Id. We are not persuaded by this argument for a number of reasons. First, *Wilson* is not binding precedent on this court. Second, the court's statement in *Wilson*, made in the context of considering a motion to strike a negligent entrustment count, must be considered in light of the language that follows the quoted passage. The court in *Wilson* continued: "Control under the Restatement must be seen as the power to exclude use of the chattel by another, but it doesn't automatically mean that the power can't be shared with others. If two parties have the right to veto the use of a chattel both parties may make judgment calls that—under some circumstances—might logically lead to liability." Id. Thus, the court in *Wilson* was addressing a situation in which there were multiple parties involved with *equal* control over use of an instrumentality and concluded that "there is no good reason to make the party immune from negligent entrustment liability merely because the party had control but not

exclusive control." Id. As we have stated, the record in the present case demonstrates that the defendant, unless his daughter agreed to abide by his wishes, had no right or ability to veto or countermand Bargabos' and Earth View's decision, even if he had known about it prior to the flight, to allow his daughter access to the airplane on the date of the crash, and, therefore, the discussion of the Restatement in *Wilson* is inapposite to the present case.[23] Third, logically, and as clearly reflected in the case law and secondary sources that we have set forth in part I of this opinion, liability for negligent entrustment is founded on the right and power of a defendant to permit or prohibit the use of the purportedly entrusted chattel. A person can exercise that degree of control only if that right to control is exclusive or, if not, then superior to any coexisting right of control held by the entrustee or by a third party. See *DeWester* v. *Watkins*, 275 Neb. 173, 178, 745 N.W.2d 330 (2008) ("if the actor does not have an exclusive or superior right of control, no entrustment of the property can occur" (internal quotation marks omitted)); see also *Bailey* v. *Advance America, Cash Advance Centers, Inc.*, supra, 2016 WL 9281316, *4 (same); *Johnson* v. *Mers*, supra, 279 Ill. App. 3d 379 (same); *Bahm* v. *Dormanen*, supra, 168 Mont. 412 (same); 65 C.J.S. 484, Negligence § 157 (2010) (superior right to control is "essential element of a negligent entrustment cause of action").

The undisputed evidence demonstrates that it was Bargabos who was responsible for deciding whether to allow a person to rent an airplane from Eagle View and what the terms and conditions of that rental would be. He required any potential pilot to present him with a pilot certification and a medical certificate, and he reviewed the pilot's log book. Only after they had been "checked out" by Bargabos would he allow the pilot to fly an Eagle View airplane. There is no evidence in the record that this procedure was not followed with respect to the defendant's daughter or, as the plaintiffs assert in their appellate brief, that the agreement between the defendant and Bargabos allowed her to have unrestricted access to Eagle View's Cessna. To the contrary, the undisputed evidence showed that, after the defendant and Bargabos met, the Cessna at issue was rented, without the defendant's knowledge and permission, by Eagle View to two other pilots in the week prior to the crash. Such evidence evinces a lack of exclusive or superior control over the Cessna by the defendant. The defendant did not have unrestricted authority, i.e., exclusive or superior control, to prevent other parties from leasing the airplane or to bump them if his daughter wanted to fly the plane. Further, Bargabos made clear in his deposition testimony that the only reason the defendant's daughter was able to rent the airplane on the date of the crash was because she had called ahead to reserve it, adding that, if another

person had reserved the plane before her, she would not have been able to use the plane on the day of the crash. We agree with the defendant's assertion in his brief that "[i]t was Bargabos' determination of [the defendant's daughter's] competency [to fly], not [the defendant's] alleged rental of the plane, that made Eagle View's plane available to her, and this is dispositive." The defendant did nothing more than facilitate his daughter's access to the airplane, which, as other courts have held, is not enough to establish control for purposes of establishing a claim of negligent entrustment.

The outcome of this case arguably might be different if the evidence showed that the defendant rented the airplane from Bargabos and Eagle View and, *after taking personal or constructive possession of it*, directly allowed his daughter to pilot the plane, knowing she was inexperienced or incompetent to fly. See *Mejia* v. *Erwin*, supra, 45 Wn. App. 703 ("a person renting or leasing a car could negligently entrust it to another"). This simply is not the case here. The defendant never had possession or control of the airplane himself and, in fact, was unaware on the day of the crash that his daughter was flying it or that the plaintiffs' decedent was a passenger.

The plaintiffs argue that § 390 of the Restatement (Second) of Torts expressly states that "[o]ne who supplies [a chattel] directly or *through a third person* . . . is subject to liability" for negligent entrustment. (Emphasis added.) 2 Restatement (Second), supra, § 390, p. 314. The plaintiffs suggest that we should view Bargabos and Eagle View as merely third parties through whom the defendant supplied his daughter with an airplane. The plaintiffs' argument, however, finds no support in the Restatement itself, as none of the illustrations provided in the commentary to § 390 concerns a lessor or owner being treated as a third person supplier for a lessee or user. Nothing in the commentary to the rule supports the plaintiffs' novel argument, nor have the plaintiffs provided us with any case law from this or any other jurisdiction that supports their interpretation. We construe the phrase "third person" as used in § 390 to mean someone who is simply acting as a conduit for the entrustor rather than someone such as Bargabos or an entity such as Eagle View that exercises independent authority and control over the chattel. For example, a person cannot avoid liability for negligent entrustment if, rather than handing a loaded gun directly to a young child, he or she instead asks a friend to bring the gun to the child. In this scenario, the person has supplied the gun "through a third person." The facts of the present case do not fall within this type of example, and, accordingly, we reject the plaintiffs' reading of § 390.

The defendant in the present case had no more control over the ill-fated airplane than did the defendant

in *Zetter* v. *Griffith Aviation, Inc.*, supra, 2006 WL 1117678. Like the defendant company in *Zetter*, which had taken actions to arrange and pay for the pilot's access to the airplane that crashed, the defendant in the present case took similar actions by arranging and paying for his daughter's general access to an airplane. Moreover, as the District Court in *Zetter* concluded in upholding the summary judgment in that case, the mere fact that the defendant in the present case paid for and arranged access to an airplane is insufficient as a matter of law to establish the control necessary to be an entrustor of that airplane. The plaintiffs have not submitted any evidence from which a trier of fact reasonably could find that the defendant ever exercised control over who had access to the Cessna involved in the crash. See *Zetter* v. *Griffith Aviation, Inc.*, supra, 2006 WL 1117678, *1, 15. When, on September 20, 2015, the defendant's daughter was granted access to the airplane, it was in the possession of its owner Eagle View and was located at the Hamilton Municipal Airport. The defendant, on the other hand, was at his home in Ridgefield and was not contacted by his daughter, Bargabos, or Eagle View before Bargabos and Eagle View permitted her to take the airplane. Put simply, the defendant did not have the power to permit or prohibit the use of the property, he did not exercise any such power on September 20, 2015, and, thus, there was no "basis for liability under the doctrine of negligent entrustment . . . ." 57A Am. Jur. 2d, supra, § 302, p. 397.

In sum, we conclude that there was no genuine issue of material fact that the defendant, on September 20, 2015, lacked the necessary control over the airplane for a trier of fact to find that he had "entrusted" it to his daughter, and, therefore, he was entitled to summary judgment as a matter of law on the negligent entrustment count. We deny the plaintiffs' claims to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to bringing this action against James Depuy in his individual capacity, the plaintiffs also brought suit against him and his wife, Cathleen Wright, in their capacities as coadministrators of the estate of Cathryn Depuy. Also named as additional defendants were Aircraft Spruce & Specialty Company; Kelly Aerospace Power Systems, Inc., and its successor in liability, Kelly Aerospace Energy Systems, LLC; Bargabos Earthworks, Inc., doing business as Eagle View Flight; and Eagle View Flight's owner and manager, Richard O. Bargabos. Because James Depuy is the sole defendant participating in the present appeal, we refer to him throughout this opinion as the defendant and to the other parties by name.

Furthermore, because counts five and six were the only counts of the operative complaint brought against James Depuy individually, the summary judgment rendered on those counts is immediately appealable. See Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint, counterclaim or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim or cross complaint brought by or against a particular party or parties"); see also *Kelly* v. *New Haven*, 275 Conn. 580, 594–96, 881 A.2d 978 (2005).

[2] The plaintiffs do not raise any challenge in the present appeal regarding the court's rendering of summary judgment in favor of the defendant on

the negligence count.

[3] The plaintiffs also argue on appeal that a genuine issue of material fact exists regarding another element of negligent entrustment, namely, whether the defendant knew or should have known that his daughter's inexperience and lack of training as a pilot posed an unreasonable risk of harm to a third party. Because we conclude as a matter of law that the defendant lacked the requisite control over the airplane to impose a duty of care under a negligent entrustment theory of liability, and because that conclusion is dispositive of the present appeal, we do not reach this additional argument.

[4] The defendant disputes that he reached any formal agreement with Bargabos or that he had any possessory interest, as lessee or otherwise, in the Cessna 150H that crashed. The defendant describes his encounter with Bargabos as a "chance meeting . . . ." The plaintiffs, however, in their opposition to the motion for summary judgment, reference a November 9, 2017 sworn affidavit by Bargabos that was included as an exhibit to the motion for summary judgment, in which he avers that, during this August 23, 2015 meeting with the defendant, they "reached an agreement whereby [Eagle View] would provide instruction and familiarization training to the [defendant's daughter] and the rental of a Cessna 150H airplane from [Eagle View] to be piloted by [the defendant's daughter] for flight in New York. The agreement was verbal and not reduced to writing."

Bargabos and Eagle View, in sworn responses to interrogatories that are also part of the summary judgment record, provided the following additional information regarding the disputed August 23, 2015 agreement between Bargabos and the defendant: "It was agreed that [the defendant's daughter] would bring with her on her first appointment with [Bargabos and Eagle View] a retainer of $1000 for payment of the services and rental to be rendered. On August 29, 2015, August 30, 2015, and [September] 2, 2015, [the defendant's daughter] appeared at Eagle View's office where she engaged in preflight inspection of the Cessna 150H airplane, ground training, and familiarization flight, and also flew solo on August 30. [The defendant's daughter] did not bring with her the $1000 retainer check on these dates. On September 3, 2015, [Eagle View] received a check from [the defendant] in the amount of $[1000] as the retainer for payment for flight instruction and plane rental."

[5] Bargabos testified during a videotaped deposition that he did not use a written rental agreement form in leasing Eagle View's aircrafts to pilots. Specifically, he stated that "I don't have them fill out any paperwork necessarily, but . . . I do require them to present their pilot certification, medical certificate, and a review of their log book. Once they've been checked out . . . then they would just schedule the airplane either with myself or one of the employees." When asked what he meant by "checked out," Bargabos responded: "Well, if they're not a pilot that I've trained or flown with before, then I would require them to fly with me to be evaluated for proficiency, and familiarization with the systems, and the flying characteristics of the particular airplane that they're going to rent to be certain that they're proficient and qualified." Bargabos then was asked who from Eagle View was responsible in 2015 for making the decision that it was acceptable to rent a plane to a given customer, to which he responded, "it was me."

[6] In its memorandum of decision, the trial court stated that, "[o]n or about May 29, 2012, the defendant Aircraft Spruce & Specialty Company had sold an overhauled replacement carburetor to Bargabos and, in turn, Bargabos caused such carburetor to be installed in the Cessna 150H airplane that [the defendant's daughter] was piloting at the time of her death." One of the plaintiffs' theories is that the crash was caused by a defect in the carburetor. The final report issued by the National Transportation Safety Board, although not expressly foreclosing that theory, states the following regarding its findings as to the probable cause of the crash: "The pilot's failure to maintain airspeed and her exceedance of the airplane's critical angle-of-attack, which led to an aerodynamic stall, following a total loss of engine power for reasons that could not be determined because postaccident examination of the airframe and engine did not reveal any anomalies that would have precluded normal operation."

[7] Prior to granting the motion for summary judgment in favor of the defendant, the trial court granted a motion to dismiss the count brought against Aircraft Spruce for lack of personal jurisdiction. The plaintiffs filed an appeal from that ruling, which our Supreme Court transferred to its own docket pursuant to Practice Book § 65-2 The Supreme Court heard oral argument on that appeal on March 25, 2022.

[8] Although the plane crash at issue occurred in New York, the parties did

not raise a choice of law issue before the trial court, instead agreeing that no outcome determinative conflict exists between the laws of New York and Connecticut with respect to the issues raised in the motion for summary judgment. "When the applicable law of a foreign state *is not shown to be otherwise*, we presume it to be the same as our own." (Emphasis added.) *Walzer* v. *Walzer*, 173 Conn. 62, 76, 376 A.2d 414 (1977). Furthermore, any choice of law claim not raised in the trial court in a timely manner is deemed to be waived in a subsequent appeal. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 90, 881 A.2d 139 (2005). Because no choice of law issue was raised before the trial court, we apply Connecticut law.

[9] Although parents are deemed to have a special relationship with their *minor* children from which a duty of care to them and others may arise; see 2 Restatement (Second), Torts § 316, p. 123 (1965); with limited exceptions not relevant here, no such duty exists between parents and their emancipated adult children. See, e.g., annot., 25 A.L.R. 5th 1, 13, § 2 [b] (1994) ("[c]ourts . . . rarely find justification for imposing liability on parents for the conduct of their adult, emancipated children and hold that [if] there is no legal right to control the children, there can be no liability imposed on the parent").

[10] In *Soto*, administrators of the estates of nine of the decedents in the 2012 Sandy Hook school shooting filed an action against the manufacturers, distributors, and sellers of the assault rifle used by the shooter. *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 65. The administrators sought damages and injunctive relief, alleging, among other causes of action, negligent entrustment of the firearm. Id., 66–68. The trial court granted the defendants' motion to strike the complaint in its entirety, and the administrators appealed. Id., 67–69. Our Supreme Court agreed with the trial court that the administrators "ha[d] not pleaded a legally sufficient cause of action in negligent entrustment under our state's common law . . . ." Id., 76.

[11] As indicated by the court in *Soto*, courts in Connecticut, prior to the decision in *Turner*, already had determined that a person who entrusted a dangerous item to another could be held liable for resulting third-party injuries. See *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 79–80. Those courts, however, had applied a traditional common-law negligence analysis, rather than analyzing the matter "under the rubric of negligent entrustment . . . ." Id., 79. The court in *Soto* cited *Wood* v. *O'Neil*, 90 Conn. 497, 500, 97 A. 753 (1916), which held that "no cause of action *in negligence* could be maintained against the parents of a fifteen year old boy who accidentally shot a companion with a shotgun because the parents, in permitting the boy to use the gun, had no specific knowledge that he was possessed of a marked careless disposition." (Emphasis added; internal quotation marks omitted.). *Soto* v. *Bushmaster Firearms International, LLC*, supra, 79. As one treatise explains: "Once the duty of care is imposed, the negligent-entrustment case is an ordinary negligence case to which all the principles of negligence law apply." See 2 D. Dobbs, The Law of Torts (2d Ed. 2001) § 330, p. 893.

[12] "In *Greeley*, the plaintiff alleged that the defendant had been negligent in entrusting his car to an unlicensed driver, who subsequently caused an accident while attempting to pass the plaintiff's vehicle. . . . [Although] liability cannot be imposed [on] an owner merely because he [e]ntrusts [his automobile] to another to drive [on] the highways, the court explained, [i]t is . . . coming to be generally held that the owner may be liable for injury resulting from the operation of an automobile he loans to another [if] he knows or ought reasonably to know that the one to whom he [e]ntrusts it is so incompetent to operate it, by reason of inexperience or other cause, that the owner ought reasonably to anticipate the likelihood that in its operation injury will be done to others." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 79–80.

[13] We note that the defendant in *Greeley* undisputedly was a joint owner of the automobile that caused the plaintiff's injuries. As courts in other jurisdictions have recognized, however, the legal ownership of an entrusted instrumentality should not be mistakenly viewed as an element of a cause of action for negligent entrustment. See, e.g., *DeWester* v. *Watkins*, 275 Neb. 173, 177–80, 745 N.W.2d 330 (2008) (overruling prior case law in Nebraska that, in setting forth elements of cause of action for negligent entrustment of automobile, used language that implied that only owner of automobile could be found liable under theory of negligent entrustment).

As set forth in § 308 of the Restatement (Second) of Torts, which we will discuss subsequently in this opinion, it is the defendant's *control* over the

instrumentality, not legal ownership thereof, that is key to a determination of liability for negligent entrustment. We find the following statement by the Supreme Court of Nebraska in *DeWester* persuasive regarding this point: "[T]he overwhelming majority of courts to have analyzed the issue have concluded that a nonowner *who has control of a vehicle* can be held liable for negligently entrusting the vehicle. Certificates of title and other incidents of legal ownership are often documents of convenience, rather than reflections of the *actual possession and control of a vehicle*. And the basis for liability under the doctrine of negligent entrustment *is the power to permit and prohibit the use of the entrusted chattel*, which need not arise from legal ownership. Holding otherwise produces the paradox that even the grossest negligence can be insulated from liability, so long as the person deciding who can drive a car is not the person who legally owns it." (Emphasis added; footnotes omitted.) Id., 178–79.

Because we agree with the logic of the foregoing statement, it is prudent for this court to caution against construing the court's language in *Soto* regarding "the elements of a cause of action sounding in negligent entrustment of an automobile"; *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 80; as limiting the scope of liability for negligent entrustment of an automobile to only the owner of an automobile.

[14] Section 308 of the Restatement (Second) of Torts provides: "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." 2 Restatement (Second), supra, § 308, p. 100. Comment (a) to § 308 further provides: "The words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity." Id., comment (a), p. 100.

[15] Section 390 of the Restatement (Second) of Torts provides: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." 2 Restatement (Second), supra, § 390, p. 314.

[16] Ultimately, the court in *Soto* decided that "[t]he rule that a cause of action for negligent entrustment will lie only when the entrustor knows or has reason to know that the direct entrustee is likely to use a dangerous instrumentality in an unsafe manner would bar the plaintiffs' negligent entrustment claims." *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 81. The direct entrustee in *Soto* was not the school shooter but the shooter's mother, and no allegation had been made "that there was any reason to expect that [the shooter's] mother was likely to use the rifle in an unsafe manner." Id.

[17] Statutes deemed "in pari materia" pertain to the same general subject matter and are "closely enough related to justify interpreting one in light of the other." 2B N. Singer & S. Singer, Sutherland Statutory Construction (7th Ed. 2008) § 51:3, pp. 240–41.

[18] Logically, a defendant cannot "entrust" an instrumentality, and potentially be subject to liability for doing so negligently, if he or she lacked the ability to exercise a right to control that instrumentality that exceeds that of the entrustee or a third party.

[19] There are relatively few cases applying principles of negligent entrustment in the context of airplanes, especially ones in which the court had been called on to analyze what constitutes control over an airplane sufficient to deem someone an entrustor or supplier of the airplane. Rather, in most cases that we have found involving an alleged negligent entrustment of an airplane, the contested issue is most often whether the defendant had knowledge of a pilot's incompetence, inexperience, or recklessness, not whether the defendant supplied or entrusted to the pilot the airplane that later crashed.

Airplanes are vehicles used for transportation that, although potentially dangerous, are not inherently so. In that regard, an airplane is similar to an automobile. See, e.g., *Garland* v. *Sybaris Club International, Inc.*, 21 N.E.3d 24, 46 (Ill. App. 2014) ("[l]ike an automobile, an airplane is not inherently dangerous, but may become so if operated by a pilot who is incompetent, inexperienced, or reckless"), cert. denied, 23 N.E.3d 1200 (2015), and cert.

denied, 23 N.E.3d 1200 (2015), and cert. denied, 23 N.E.3d 1200 (2015); see also *Cosey ex rel. Hilliard*, Docket No. 2019-785, 2020 WL 6687515, *15–16 (La. App. November 12, 2020) (agreeing with case law from other states that airplanes are not inherently dangerous instrumentalities), writ denied, 312 So. 3d 1097 (La. 2021). In resolving the present appeal, therefore, it is appropriate for us to consider and rely on case law discussing negligent entrustment of both airplanes and automobiles. See *Garland* v. *Sybaris Club International, Inc.*, supra, 46; *Cosey ex rel. Hilliard*, supra, *15–16; see also *Hubbard* v. *Pacific Flight Services, Inc.*, Docket No. C046617, 2005 WL 2739818, *4 (Cal App. October 25, 2005) (applying precedent concerning negligent entrustment of automobile to entrustment of private plane).

[20] The court also affirmed the rendering of summary judgment on the alternative ground that, although there was evidence that the driver had had multiple speeding violations and prior motor vehicle accidents as a teenager, there was no evidence from which to conclude that the father was or should have been aware that his son's driving was "not satisfactory, much less reckless, heedless, or incompetent . . . because [the son] was emancipated and not living in his parents' home at the time he received the traffic citations and was involved in the accidents . . . ." (Internal quotation marks omitted.) *Mejia* v. *Erwin*, supra, 45 Wn. App. 704.

[21] According to *Johnson*, "both [the officer] and Johnson had attended a fundraiser at [a local restaurant] where [the officer] consumed several alcoholic beverages. [The officer] quarreled with Johnson, and Johnson left and returned to his mobile home. After a short time, [the officer] also left and returned to Johnson's mobile home. Their quarrel continued, and [the officer] drew her service revolver and fired several shots into the ceiling. Both [the officer] and Johnson then allegedly struggled with the revolver, whereupon [the officer] shot Johnson in the head, causing permanent injuries." *Johnson* v. *Mers*, supra, 279 Ill. App. 3d 375. Johnson filed a personal injury action, raising claims against the officer, the restaurant, and the town in which the officer was employed. Id.

[22] The plaintiffs argue in their appellate brief that the trial court improperly adopted the defendant's version of the facts surrounding their meeting at the Hamilton Municipal Airport. Even if we agreed with this contention, it is important to remember that we review de novo the summary judgment record to determine whether summary judgment properly was rendered. Accordingly, the trial court's recitation of the underlying facts has no bearing on our review.

[23] For this same reason, the court's decision in *Prior* v. *Lang*, Docket No. CV-07-5001248S, 2009 WL 1532526 (Conn. Super. May 7, 2009), on which the plaintiffs place substantial reliance, is similarly inapposite.